**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ) | |
| ALINE UWIMANA ) | Case No. **1:26-cv-13071** |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID WESLING, Field Office Director, ) | |
| DAVID VENTURELLA, Acting Director U.S. ) | |
| Immigration and Customs ) | |
| Enforcement, ) | |
| MARKWAYNE MULLIN, Secretary of Homeland ) | |
| Security, ) | |
| TODD BLANCHE, U.S. Attorney General, and ) | |
| ) | |

## INTRODUCTION

1. Petitioner Aline Uwimana is a Rwandan national and asylum seeker. She is married to a Lawful Permanent Resident ("LPR") and has a United States Citizen toddler.

2. After Petitioner entered the United States on a visa in 2018, she applied for asylum with USCIS.

3. Despite having an affirmative asylum application pending with USCIS and not being placed in proceedings, Petitioner was detained by she was unlawfully detained by federal immigration agents on July 2, 2026. *See* Tab A, Automated Case Information System (showing "no case found); Tab B, Online Detainee Locator System.

4. Accordingly, to vindicate Petitioner's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus.

5. Petitioner asks this Court to find that she was unlawfully detained and order her release.

6. Furthermore, this Court should find that ICE did not have the authority to detain Petitioner and that her detention violates the asylum statute. *See Doe v. Jamison*, 26-1906, 2026 U.S. Dist. LEXIS 68893 at *14 (E.D.Pa. Mar. 31, 2026) ("Petitioner was entitled, under § 1158, to an interview and adjudication of his asylum claim prior to his detention.")

## **JURISDICTION AND VENUE**

7. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

8. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

9. Under 28 U.S.C. § 2241, "[w]rits of habeas corpus may be granted by . . . the district courts within their respective jurisdictions" when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." This jurisdiction includes "writs of habeas corpus filed by immigration detainees before and after a final order of removal has been issued." *Dambrosio v. McDonald*, 2025 U.S. Dist. LEXIS 67848 at * 4 (D. Mass Apr 9, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)).

10. The First Circuit has routinely held that "district courts retain jurisdiction over challenges to the legality of detention the immigration context." *Aguilar v. U.S. Immigr. & Customs Enf't div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) (citing *Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir. 2005) (holding that detention claims are independent of removal proceedings and, thus, not barred by section 1252(b)(9))). Specifically, "constitutional challenges regarding the availability of bail" fall within this Court's habeas review. *Id.* (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

11. Because Petitioner is solely contesting her ongoing detention through her Petition, this Court has jurisdiction and maintains the authority to order her immediately released. *See contra Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("[Section] 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision to seek removal,' or 'the process by which removability will be determined'" (ellipses omitted) (quoting *Jennings*, 583 U.S. at 294-95)).

12. In the alternative, this Court has jurisdiction and maintains the authority to order Petitioner be provided with a bond hearing in the Immigration Court where DHS bears the burden of demonstrating she is a danger to the community or a flight risk. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) ("[D]ue process requires the government to either (1) prove by clear and convincing evidence that [he] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk.").

13. The legal issue here is "wholly collateral to the removal process." *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).

14. Venue is proper because Petitioner is in the custody of the Immigration and Customs Enforcement in Massachusetts, which is within the jurisdiction of this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that . . . jurisdiction lies in only one district: the district of confinement.") (*cited in Trump v. J.G.G.*, 145 S. Ct. 1003, 1006-07 (2025) (per curiam)).

## PARTIES

15. The Petitioner Aline Uwimana is a Rwandan national and asylum seeker.

16. Respondent David Wesling is the New England Field Office Director for U.S. Immigration and Customs Enforcement. Respondent Westling is a legal custodian of Petitioner.

17. Respondent David Venturella is the Acting Director for U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner.

18. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security. Respondent Mullin is a legal custodian of Petitioner.

19. Respondent Todd Blanche is the U.S. Attorney General. Respondent Blanche is a legal custodian of Petitioner.

20. All respondents are named in their official capacities.

<u>**FACTUAL ALLEGATIONS**</u>

21. Petitioner, Aline Uwimana is a native and citizen of Rwanda. She entered the United States on Visa in 2018.

22. After her arrival, Petitioner applied for affirmative asylum with USCIS.

23. On information and belief, Petitioner was detained on July 2, 2026, despite having a pending affirmative asylum case and not being in removal proceeding. *See* Tab D.

24. On information and belief, Petitioner was not provided with a warrant <u>at the time of her arrest</u>.

<u>**LEGAL BACKGROUND**</u>

25. For noncitizens seeking asylum, there are two pathways to take: (1) affirmative asylum applications before United States Citizenship and Immigration Services ("USCIS") Fand (2) defensive asylum applications before the Executive Office for Immigration Review ("EOIR"). The path is determined by whether a person was already placed into removal proceedings.

26. The detention of noncitizens like Petitioner that have exercised their right to seek asylum before USCIS and are now being denied the ability to complete that process is part of the

nationwide campaign to punish asylum seekers and dissuade noncitizens from pursuing protection and relief from removal. At first, this campaign saw a wave of affirmative asylum seekers having their applications dismissed by USCIS. *See* Ximena Bustillo, *Asylum-Seekers Thought They Were Following the Rules. Now Some Are Told to Start Over*, NPR Aug. 10, 2025, 5:00 AM ET, https://www.npr.org/2025/08/10/nx-s1-5487598/asylum-seekers. Around the same time, defensive asylum seekers experienced a similar wave, with attorneys for DHS moving to dismiss removal proceedings to place noncitizens into expedited removal. *See id*. More recently, the government has pivoted to arresting asylum seekers at their interviews and pretermitting asylum applications before the immigration court. *See* Arya Sundaram, *'Sign of the Times': NY Asylum-Seekers Arrested at Routine Immigration Appointments*, Gothamist Jan. 20, 2026, https://gothamist.com/news/sign-of-the-times-ny-asylum-seekers-arrested-at-routine-immigration-appointments (reporting detentions at asylum offices in Houston, Newark, San Francisco, Los Angeles, and New York City); *see also* Sharon Bernstein*, New Tactics Replace Immigration Court Arrests as DHS Seeks to End Asylum Cases*, The Sacramento Bee Feb. 3, 2026, 5:00 AM, https://www.sacbee.com/news/local/article314296524.html.

A. **DUE PROCESS EXTENDS TO ALL PERSONS IN THE UNITED STATES, REGARDLESS OF STATUS OR MANNER OF ENTRY**

27. The Supreme Court has long held that "The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [noncitizens] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). It continued: "Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." *Id.*; *see Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due

Process Clause applies to all 'persons' within the United States...”). The Supreme Court affirmed its previous holdings in *Reno v. Flores*, finding that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 507 U.S. 292, 306 (1992).

28. For nearly 50 years, the standard to determine a violation of procedural due process requires balancing three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 474 U.S. 319, 335 (1976). The First Circuit has previously applied the three-part *Mathews* test in immigration custody matters. *See Hernandez-Lara*, 10 F.4th at 28-35.

29. **Private Interests.** Petitioner's private interests in this matter concern "the most elemental of liberty interests—the interest in being free from physical detention by one's own government" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Her private interests are amplified because "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). The First Circuit also considered that the "exact length of detention . . . is impossible to predict and can be quite lengthy." *Hernandez-Lara*, 10 F.4th at 29. Here, Petitioner has resided in the United States as an asylum seeker for years. During this time, she has married a Lawful Permanent Resident and given birth to a United States Citizen child.

30. **Risk of Erroneous Deprivation.** Courts across the country have found that the risk of erroneous deprivation of rights is high regarding immigration detention proceedings and issued temporary restraining orders. *See, e.g.*, *Flores v. Noem*, No. 25-2490, 2025 LX 444718 (C.D. Cal. Sept. 29, 2025) (Birotte, J.); *Lopez v. Hardin*, No. 25-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025) (Dudek, J.); *Maldonado v. Olson*, No. 25-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (Nelson, J.). Specifically, "the risk of erroneous deprivation is extraordinarily high where federal immigration officials have the sole, unguided, and unreviewable discretion to detain." *Lopez v. Noem*, 2:26-cv-00047-RFB-EJY, 2026 U.S. Dist. LEXIS 21679 at * (D. Nev. Feb. 3, 2026).

31. **Competing Interests.** The Supreme Court found that immigration detention, as a civil matter, is assumed to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. The government interest in detaining a noncitizen falls clearly within two categories: dangerousness or flight risk. *See id.* at 690-91; *see also Hernandez-Lara*, 10 F.4th at 33 (finding that detention is limited to "only those noncitizens who are dangerous or a flight risk"). Because the First Circuit found that due process requires "that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)," Respondents' competing interests are sufficiently protected by the procedures governing a bond hearing. *Hernandez-Lara*, 10 F.4th at 39.

**B. <u>RESPONDENT'S DETERMINATION TO TAKE PETITIONER INTO CUSTODY VIOLATED DUE PROCESS AS AN ABUSE OF ICE'S DISCRETION</u>**

32. According to 8 C.F.R. § 236.1(c)(8), an ICE officer with the authority to issue a warrant also has the authority to release a noncitizen that does not pose a danger to the community and is not a flight risk. At this initial custody determination, the ICE officer may release a

noncitizen on a minimum $1,500 bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B).

33. If an ICE officer determines that a noncitizen is a danger to the community and/or poses a flight risk, then the ICE officer may detain the noncitizen for further proceedings. At this point, the noncitizen may seek a custody redetermination hearing before an immigration judge. *See* 8 C.F.R. § 236.1(d)(1).

34. When the Board of Immigration Appeals ("BIA") was creating the standard governing custody redetermination hearings before an immigration judge, it initially adopted the language from 8 C.F.R. § 236.1(c)(8). *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021).

35. However, when the First Circuit considered this standard, it found that the Constitution required something different, namely that the government bears the burden of demonstrating dangerousness and flight risk. *See id.* at 41. The Court then set forth the following: "[D]ue process requires the government to either (1) prove by clear and convincing evidence that [a noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [a noncitizen] poses a flight risk." *Id.*

36. **Initial Custody Determination.** A District Judge in South District of New York noted that, although the Government has "significant discretion" under 8 U.S.C. § 1226, "Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Huamani v. Francis*, 25-cv-8110 (LJL), 2025 U.S. Dist. LEXIS 219101 * 18 (S.D.N.Y. Nov. 4, 2025). Although the underlying facts greatly vary — in *Huamani*, the noncitizen was detained while leaving an immigration hearing, but Petitioner here was detained with a pending asylum application — the requirement remains the same: DHS is

required to <u>actually exercise</u> its discretion and make a determination. *See id*. Here, no evidence exists to suggest that the DHS ever considered whether Petitioner is a flight risk or dangerous, thus necessitating her detention. On information and belief, ICE provided only one reason for her detention: her visa overstay, which occurred years ago. During that decade, she created significant community ties and pursued legal status. ICE made no mention of her pending asylum application, nor her marriage to a Lawful Permanent Resident. It is unclear what ICE relied on to determine that she is now a flight risk or dangerous.

37. **Post-Hoc Rationalization.** As the Supreme Court has held: "The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted. This is not the case for cutting corners to allow DHS to rely upon reasons absent from its original decision." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020). <u>Because the only constitutional rationale for detaining a noncitizen is that they either pose a flight risk or danger to the community, ICE detaining Petitioner *and then* initiating proceedings is incredibly problematic.</u> On information and belief, ICE did not make any statements or indicate that she was being detained because she was determined to be a danger to the community. This leaves only one possible justification: ICE must have determined that Petitioner was a flight risk. However, this justification begs the question: what was Petitioner a flight risk from. She is not in proceedings, so she could not be a flight risk from removal proceedings. She was already willingly availing herself of USCIS's jurisdiction with regard to her asylum application and marriage petition. Petitioner had not been scheduled for an asylum interview or marriage interview that she sought to evade. <u>Where Petitioner has no current removal proceedings and where no Notice to Appear has</u>

been issued and docketed, this Court should find that her current detention is improper.[1] This Court should adopt District Judge Cynthia M. Rufe from the Eastern District of Pennsylvania and find: **"[T]he arrest and detention of affirmative applicants for asylum, who are patiently waiting for years-long delays in asylum adjudications, in violation of the INA, is an abrupt policy change. . . . This policy change, coupled with the failure to comply with the INA's asylum timeline, as applied to Petitioner and those similarly situated, strips § 1158 of its meaning**." *Doe v. Jamison*, 2026 U.S. Dist. LEXIS 68893 at \*15. Precedent is clear: "*post hoc* rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action." *American Textile Mfrs. Institute, Inc. v. Donovan*, 452 U. S. 490, 539 (1981).

## C. <u>PETITIONER IS OWED A CONSTITUTIONALLY SUFFICIENT CUSTODY REDETERMINATION HEARING BEFORE 8 U.S.C. § 1226(a).</u>

38. Because Petitioner initially entered on a visa, she would not be subject to the BIA's decision in *Matter of Yajure Hurtado* that rendered noncitizens who came to the United States without inspection ineligible for bond. 29 I&N Dec. 216 (BIA 2025). This Petition is not a request for the Court to find that 8 U.S.C. § 1226(a) applies and order a bond hearing because she would otherwise be ineligible, **instead it is a request that this Court enforce Petitioner's rights for a constitutionally sufficient hearing before the Chelmsford Immigration Court**. District Judge Landya McCafferty recently upheld the ability for the District Court to review whether bond proceedings comply with due process and the proper burden of proof. *See Mayancela v. FCI Berlin, Warden*, 25-cv-348-LM-TSM, 2025 U.S. Dist. LEXIS 226280 at \* 11 (D.N.H. Nov. 18, 2025) ("Because Mayancela claims that the

---

[1] Petitioner is not challenging DHS's authority to bring removal proceedings, which is unreviewable in habeas proceedings.

IJ failed to apply the constitutionally mandated burden of proof, this court has jurisdiction to consider Mayancela's claim.").

39. Despite the Declaratory Judgment from District Judge Patti Saris of the District Court of Massachusetts in *Guerrero Orellana v. Hyde*, Immigration Judges at the Chelmsford Immigration Court continue to refuse to hold custody redetermination hearings for class members. *See* Nate Raymond, *Top US Immigration Judge Says Bond Hearings Should be Denied Despite Court Rulings, Documents Show*, Reuters, https://www.reuters.com/legal/government/top-us-immigration-judge-says-bond-hearings-should-be-denied-despite-court-2026-01-16/ (last updated Jan. 16, 2026, 5:11 PM EST).

40. Although this may not directly implicate whether an immigration judge will conduct a constitutionally sufficient bond hearing, it demonstrates that EOIR continues to disregard orders from Article III District Courts and abide by its own internal policies. Months ago, District Judge Brian E. Murphy noted that "the prospect of an unaffected decisionmaker seems unrealistically thin" at the Chelmsford Immigration Court. *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). Recently, the District of Rhode Island has ordered multiple noncitizens released because immigration judges improperly held people without bond by finding that the government had met its burden, despite the record establishing that this was untrue as a matter of law. *See, e.g.*, *Pineda v. Michael Nessinger, Warden of Wyatt Det. Facility*, C.A. No. 1:25-CV-522-MSM-AEM, 2025 U.S. Dist. LEXIS 233117 (D.R.I. Nov. 24, 2025) (ordering noncitizen immediately released); *Garcia v. Hyde*, C.A. No. 25-cv-585-JJM-PAS, 2025 U.S. Dist. LEXIS 253787 (D.R.I. Dec. 3, 2025) (same). In

order to ensure that Petitioner is provided with a constitutionally sufficient bond hearing in accordance with *Hernandez-Lara*, Petitioner requests that this Court order such.

## D. PETITIONER'S WARRANTLESS ARREST WAS UNLAWFUL

41. Although warrantless arrests are allowed in certain instances, they are limited by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). 8 U.S.C. § 1357(a)(2) allows for warrantless detention if the immigration official finds that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." Likewise, 8 C.F.R. § 287.8(c)(2)(ii) states: "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." (emphasis added).

42. The use of the word "shall" has frequently been found to mean that the action is mandatory in the immigration context. *Jennings* v. Rodriguez, 583 U.S. 281, 300 (2018) (finding that the word "shall" in 8 U.S.C. § 1225(b)(1) and (b)(2) means that detention is required under those statutes.). Thus, Petitioner asks that this Court adopt the interpretation that immigration officials are required to seek a warrant, unless the specific exception applies.

## E. WAIVER OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

43. Exhaustion of administrative remedies falls within two distinct categories: statutory and common law. *See Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). Where, as here, the statute does not require administrative exhaustion, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *cited in Morgan v. Garland*, 120 F.4th 913, 927 (1st Cir. 2024).

44. Decades of precedent stands for the proposition that "*generally speaking*, a plaintiff's failure to exhaust his or her administrative remedies precludes the plaintiff from obtaining

federal review of claims that would have properly been raised before the agency in the first instance." *Brito,* 22 F.4th at 255 (emphasis added); *see McCarthy*, 503 U.S. at 144-45 ("This Court long has acknowledged the *general rule* that parties exhaust prescribed administrative remedies before seeking relief from the federal courts.") (emphasis added).

45. As the use of the phrases "generally speaking" and "general rule" imply, there are exceptions to the exhaustion requirement. *See McCarthy*, 503 U.S. at 146 ("This Court's precedents have recognized at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.").

46. Waiver of the exhaustion requirement is justified in three circumstances: (1) "when unreasonable or indefinite delay threats unduly to prejudice the subsequent bringing of a judicial action," (2) "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," and (3) "if the potential decisionmaker is biased or can be shown to have predetermined the issue." *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy*, 503 U.S. at 145-48). This third circumstance is commonly used where seeking administrative remedies would be "futile." *Portela-Gonzalez*, 109 F.3d at 78; *McCarthy*, 503 U.S. at 148.

47. **Unreasonable and Indefinite Delay.** In the current political and legal climate, requiring Petitioner to first seek a custody redetermination hearing with the immigration court is inefficient, prejudicial, and needlessly delays her release. In *Sampiao v Hyde*, the District Court of Massachusetts noted that "Irreparable harm may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies." 1:25-cv-11981-JEK, 799 F. Supp. 3d 14, 2025 U.S. Dist. LEXIS 175513 at *15 (D. Mass. 2025). The Court further noted that "the average processing time for bond appeals exceeded 200

days in 2024." *Id.* at * 16 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025)). Without this Petition, Respondents would have the ability to transfer Petitioner within the United States with no oversight for over 200 days, between her detention, bond denial, and appeal. *See id.* Enforcing an administrative remedies exhaustion requirement in ICE detention proceedings would only serve to prejudice noncitizens and allow the government free reign to transfer, detain, and otherwise infringe on the liberty of noncitizens without checks and balances. Recently, ICE has transferred noncitizens to far away states, even in the face of court orders barring such action. *See, e.g.*, Order, *Mendoza Velazquez v. U.S. Immigr. And Customs Enf.*, 1:26-cv-00030-SE-AJ at *3 (D.N.H. Jan. 30, 2026) (finding that federal respondents "continued to transfer the petitioner farther and farther away from New Hampshire despite the court's order."); Emily Allen, *A Judge in Maine Ordered ICE to Bring 2 Men Back. They Were Released in Ohio*, Portland Press Herald, https://www.pressherald.com/2026/02/10/a-judge-in-maine-ordered-ice-to-bring-2-men-back-they-were-released-in-ohio/ (last updated Feb. 11, 2026).

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF THE FIFTH AMENDMENT - DUE PROCESS CLAUSE

48. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

49. Petitioner has a fundamental interest in liberty and being free from official restraint.

50. The government's detention of Petitioner cannot rest on *post hoc* justifications for her arrest.

51. The government's detention of Petitioner without a warrant and without an pre-arrest individualized determination that she is a flight risk or danger to others violates her right to due process.

## COUNT II: VIOLATION OF 8 U.S.C. §1158 – ASYLUM PROCEDURES

52. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

53. Petitioner filed for asylum with USCIS after entering the United States, which prevented her from accruing unlawful presence under 8 U.S.C. §1182(a)(9)(B)(iii)(II).

54. Because Petitioner has not been accruing unlawful presence, arresting Petitioner for being in the United States unlawfully directly contradicts the purpose of the asylum statute and relevant regulations.

55. The government's detention of Petitioner while she has a pending affirmative asylum application and has not been placed in proceedings is unlawful.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

1) Assume jurisdiction over this matter;

2) Order that Petitioner shall not be removed from the United States nor transferred outside the District of Massachusetts;

3) Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a);

5) Issue a Writ of Habeas Corpus ordering Respondents:

(a) to immediately release Petitioner from detention;

(b) if at the time of the hearing for this habeas the Court has already ordered Petitioner released under its inherent Article III authority, to not re-detain Petitioner;

(c) in the alternative,  to provide Petitioner an individualized bond hearing before an Immigration Judge on the merits in accordance with *Hernandez-Lara v Lyons*, 10 F.4th 19 (1st Cir. 2021), and 8 U.S.C. § 1226, at a time and in a manner that places Petitioner in the same position she would be if not for the Respondents' unlawful conduct, and, if the Immigration Judge grants bond, to immediately accept payment of the bond and release Petitioner from detention,

(d) return all of Petitioner's possessions to her upon release.

6) Award Petitioner's attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

7) Grant any further relief this Court deems just and proper.

Date: July 2, 2026

Respectfully Submitted,

Amelia L. Ritenour, Esq.
Haven Immigration Law, LLC
132 Spring St, Floor 1
Portland, ME 04101
ar@im.law
+1 207 383 1898
*Counsel for Petitioner*

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I represent Petitioner, Aline Uwimana, and submit this verification on their behalf. I hereby verify under penalty of perjury that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Date: July 2, 2026

Respectfully Submitted,

Amelia L. Ritenour, Esq.

Haven Immigration Law, LLC
132 Spring St, Floor 1
Portland, ME 04101
ar@im.law
+1 207 383 1898
*Counsel for Petitioner*